```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEBRASKA
```

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | 4:06CR3016 |
| v. ) | |
| ) | |
| ARMANDO GARCIA-DELACRUZ, ) | |
| MARCO M. PRUNEDA, ) | REPORT, RECOMMENDATION, |
| ) | AND ORDER |
| Defendants. ) | |

INTRODUCTION

The defendant, Armando Garcia-Delacruz has moved to suppress any and all evidence, including statements, obtained as a result of the January 25, 2006 search of his residence located in Hastings, Nebraska. Filing 39. Garcia-Delacruz claims that the Adams County Special Response Team (SRT) did not reasonably believe that he resided and was currently present at this residence when it executed a federal arrest warrant. Garcia-Delacruz further claims that the initial warrantless search of his residence violated his fourth amendment rights, and because evidence found during this search was later used to obtain a search warrant, any evidence found during the subsequent search of his home pursuant to a warrant must be suppressed as fruit of the unlawful warrantless search. For the reasons discussed herein, I shall recommend denial of the defendant's motion.

FACTUAL FINDINGS

For a period of approximately six to eight months prior to January 19, 2006, Deputy Glen Kemp of the Adams County Sheriff's Department had been investigating possible criminal activity connected with Garcia-Delacruz's home in Hastings, Nebraska. This ongoing investigation included conversations with three confidential informants who stated that Garcia-Delacruz resided at this address and was involved in methamphetamine trafficking. Garcia-Delacruz was indicted on January 20, 2006, and a warrant was issued fro his arrest on January 23, 2006. Filing 1 (Indictment); Ex. 7 (Arrest Warrant).

Anticipating that Garcia-Delacruz would be found and the arrest warrant executed at his Hastings residence, the SRT Team began surveillance of his home on January 25, 2006. Between 5:00 p.m. and 6:00 p.m., law enforcement officers saw an individual matching the description of Garcia-Delacruz outside the residence repairing an automobile. Soon thereafter, several individuals arrived at the residence. Therefore, in order to avoid or reduce any confrontation with bystanders while making the arrest, the SRT Team decided to immediately proceed with executing the felony arrest warrant for Garcia-Delacruz.

Simultaneous with the SRT Team's decision to approach and apprehend Garcia-Delacruz, he and another individual entered the residence through a rear door of the home. The door was still open when the SRT officers reached the house. They proceeded through the door and saw Garcia-Delacruz and another individual standing below them in the basement of the home. There were no stairs to access the basement, only a broken step ladder, so Deputy Kemp and two other SRT members jumped into the basement,

and immediately apprehended Garcia-Delacruz and the other individual.

Though there did not appear to be anyone else present, Deputy Kemp remained concerned that others may have been hiding in the basement. Therefore, Deputy Kemp quickly surveyed the immediate proximity of Garcia-Delacruz's arrest and a portion of the basement which was separated by a partially built wall. While doing so, Deputy Kemp saw, in plain view, two glass pipes for smoking controlled substances, three firearms, and various rounds of 9 mm ammunition. The officers then removed Garcia-Delacruz and the other individual from the residence.

While the SRT Team was conducting the surveillance that ultimately culminated in Garcia-Delacruz's arrest, other law enforcement agents were in the process of drafting a warrant application to search Garcia-Delacruz's residence. The information gleaned by SRT officers during Garcia-Delacruz's arrest was relayed to the officers preparing the application and was included in the application. The search warrant affidavit included the following:

- Statements by a confidential informant that Garcia-Delacruz had repeatedly offered methamphetamine instead of wages for work performed on his basement, and kept a sawed-off shotgun and several other weapons within his home;

- Information about suppliers and sub-dealers working with Garcia-Delacruz;

- Facts regarding Garcia-Delacruz's confrontations with two separate confidential informants which included the use of a firearm to threaten and intimidate them;

- The information provided by Deputy Kemp and SRT officers concerning their observations of glass pipes,

    firearms, and ammunition during Garcia-Delacruz's arrest on January 25, 2006.

Ex. 2 (Warrant Application).

  The warrant application was presented to the undersigned magistrate judge and a warrant was issued to search Garcia-Delacruz's home.  The search warrant ordered the Adams County Sheriff's Department to search for methamphetamine, papers and monies which are proceeds or records of transactions for the sale and delivery of drugs, glass pipes for smoking controlled substances, and drug paraphernalia used in the distribution of drugs.  Ex. 2 (Search Warrant).

  The search warrant was executed by the Adams County Sheriff's Department.  The officers seized a glass pipe with residue, suspected methamphetamine, an electronic scale, guns, ammunition, cell phones, phone cards, vehicle titles, and pieces of mail addressed to Armando Garcia-Delacruz.[1]  Ex. 2 (Warrant Return).

## LEGAL ANALYSIS

  A. <u>Reasonable Belief as to Garcia-Delacruz's Residence</u>.

  Garcia-Delacruz argues that the SRT Team entered his home without a reasonable belief that he resided and was currently present at this residence.  A valid arrest warrant carries with it the authority to enter the residence of the person named in

---

[1] Though Garcia-Delacruz's motion seeks suppression of statements obtained as fruit of the alleged Fourth amendment violations, no evidence nor arguments were offered regarding statements.

the warrant in order to execute the warrant so long as the police reasonably believe the suspect resides at the place to be entered and is currently present in the dwelling. Payton v. New York, 445 U.S. 573, 603 (1980); United States v. Powell, 379 F.3d 520, 523 (8th Cir. 2004).

On January 23, 2006, Garcia-Delacruz was the subject of a federal arrest warrant issued by the United States District Court for the District of Nebraska. Information from confidential informants indicated the Hastings residence under surveillance was Garcia-Delacruz's primary residence, and during the surveillance, law enforcement officers saw an individual matching Garcia-Delacruz's description outside the residence and later entering the home. In addition, in an unrelated incident, Garcia-Delacruz had told Deputy Kemp that this address was his permanent residence. Based on these facts, the police officers had sufficient reason to believe Garcia-Delacruz resided at and was currently present within this dwelling.

    B.    The Initial Warrantless Search--the "Protective Sweep."

Garcia-Delacruz claims the SRT Team did not have lawful authority to conduct an initial "protective sweep" of his home without a search warrant. Law enforcement officials may not enter a home to conduct a search absent a search warrant or exigent circumstances. United States v. Vance, 53 F.3d 220, 222 (8th Cir. 1995). Exigent circumstances exist when law enforcement officials have "legitimate concern for the safety" of themselves. Id.

However, upon entering a residence to execute an arrest warrant, officers may make a limited "protective sweep" of a

-5-

residence if they have a "reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." United States v. Walsh, 299 F.3d 729, 733 (8th Cir. 2002) (citing Maryland v. Buie, 494 U.S. 325, 337 (1990)).  A "protective sweep" search is limited to conducting a cursory inspection of spaces from which an attack could be immediately launched.  Maryland v. Buie, 494 U.S. 325, 337 (1990); United States v. Boyd, 180 F.3d 967, 975 (8th Cir. 1999).

   The officers had information that Garcia-Delacruz harbored weapons and illegal drugs in his home.  A confidential informant had disclosed that he had seen several weapons within Garcia-Delacruz's home and on a number of occasions, Garcia-Delacruz and Marco Pruneda had threatened to use violence against them.  Under such circumstances, the officers had a legitimate concern that Garcia-Delacruz could pose a threat to their safety.

   Garcia-Delacruz contends, however, that officers cannot use exigent circumstances they created to justify a warrantless search of a home.  He claims the SRT Team could have asked Garcia-Delacruz to exit the basement instead of entering the home, and their choice to enter cannot create a permissible basis for conducting a protective sweep of the home.  Garcia-Delacruz claims that had the officers arrested him outside his home, they could have eliminated their safety concerns simply by leaving the area, and a protective sweep would have been unnecessary.

   However, the officers lawfully entered the home to conduct the arrest.  When they did so, they knew Garcia-Delacruz was not alone.  He had entered the home with another person, and others had arrived at the house.  "Law enforcement officers are not

required to avoid danger" and, more specifically, they were not required to ignore the presence of others at the scene even if the subject of the warrant has already been arrested.  Vance, 53 F.3d at 221 n.4.

Upon entering Garcia-Delacruz's home, the officers immediately saw Garcia-Delacruz and another individual standing below them in the basement.  Rather than allow Garcia-Delacruz to exit the basement unattended, and leave another person in the home, they entered the basement, secured the other person, and apprehended Garcia-Delacruz before he could attempt to escape or obtain a weapon to use against the officers.  Although Deputy Kemp and the other SRT members had immediately subdued Garcia-Delacruz, the basement was dimly lit, was divided by a partial wall, and the officers were unsure whether anyone else was present who could pose a threat to their safety.  Entering the basement rather than asking Garcia-Delacruz to exit, and then performing a cursory "protective sweep" of Garcia-Delacruz's entire basement, was appropriate to assure the safety of the officers.  Vance, 53 F.3d at 222 (holding exigent circumstances justified warrantless entry of home after arrest where a third person was present and officers had been informed that other individuals with weapons were in the house); United States v. Kaylor, 877 F.2d 658, 664 (8th Cir. 1989)(holding protective sweep search was justified where the suspect was arrested directly outside the home, that arrest may have alerted others living in the home, the police did not know exactly how many people remained inside, drugs were of a type and quantity easily disposed of, and the arrested suspect was known to have a gun, but the gun was not on his person at the time of arrest).

C.   <u>The Search Warrant</u>.

Garcia-Delacruz argues that the search warrant was tainted because some of the facts used to establish probable cause were illegally discovered by the SRT Team during the protective sweep. He claims the court must suppress the evidence obtained from the search conducted pursuant to a warrant because such evidence is "fruit of the poisonous tree." <u>United States v. Wong Sun</u>, 371 U.S. 471 (1963).

It is well settled that an officer may, without a warrant, seize objects that are in plain view, provided that the officer is legally in a position to view the object and the object's incriminating character is immediately apparent. <u>United States v. Khabeer</u>, 410 F.3d 477, 482 (8th Cir. 2005); <u>United States v. Bustos-Torres</u>, 396 F.3d 935, 944 (8th Cir. 2005). As previously explained, Deputy Kemp had the lawful right to perform a "protective sweep" of the basement in order to secure the safety of himself and his fellow officers. The contraband discovered in Garcia-Delacruz's basement was effortlessly seen in plain view during that protective sweep, and the incriminating character of drug paraphernalia was immediately apparent to someone with Deputy Kemp's extensive training and experience. Weapons and ammunition were also in plain view. Deputy Kemp did not have to move any objects to discover any of these items. Therefore, the discovery of glass pipes, firearms, and ammunition in Garcia-Delacruz's home did not violate the Fourth Amendment, and including this information in the search warrant application could not taint the warrant obtained.

Even assuming the evidence was illegally obtained, there was independent information establishing probable cause to issue the

search warrant.  "The inevitable discovery exception to the exclusionary rule articulated in Nix v. Williams, 467 U.S. 431, 440-50, 104 S.Ct. 2501, (1984), allows the government to show by a preponderance of the evidence that the evidence seized would have been discovered in any event by lawful means."  United States v. Halls, 40 F.3d 275, 276 (8th Cir. 1994).  The government must show:  (1) its decision to seek a search warrant was independent from the illegal search, and (2) the information obtained from the unlawful search did not affect whether the magistrate judge issued the search warrant.  Murray v. United States, 487 U.S. 533, 542 (1988); Khabeer, 410 F.3d 477, 483.

Before Garcia-Delacruz was arrested, the Adams County Sheriff's Department began drafting an application for a warrant to search his home.  Although the information provided by the SRT Team was added to the warrant application, even without this information, the statements of three confidential informants along with the officers' independent investigation established that Garcia-Delacruz was continually involved in the distribution of methamphetamine, had a tendency to use violence, and possessed numerous firearms and significant amounts of methamphetamine in his home.  Had the SRT not entered Garcia-Delacruz's home and seen illegal contraband, weapons, and ammunition, and had this information not been included in the warrant application, the Sheriff's Department would nonetheless have established probable cause to believe evidence of illegal activity would be found in the home, and would have applied for and received a valid search warrant.  Because the seized evidence would have been discovered in any event by lawful means, the inevitable discovery exception to the exclusionary rule precludes this court from suppressing the evidence.  Segura v. U.S., 468 U.S. 796 (1984)(holding that evidence seen in plain view during earlier illegal entry would

not be suppressed where officers were independently seeking a search warrant and the evidence would have inevitiably been found); United States v. Templeman, 938 F.2d 122 (8th Cir. 1995)(upholding a search executed under a valid warrant even though the affidavit for the warrant potentially contained information obtained during a prior illegal search of the premises).

IT THEREFORE IS HEREBY RECOMMENDED to the Hon. Warren K. Urbom, United States Senior District Judge, pursuant to 28 U.S.C. §636(b)(1)(B), that the defendant's motions to suppress, filings 39, be denied in all respects.

The parties are notified that a failure to object to this recommendation in accordance with the local rules of practice may be held to be a waiver of any right to appeal the district judge's adoption of this recommendation.

IT FURTHER HEREBY IS ORDERED:  Trial is set for 9:00 a.m. on December 18, 2006 for a duration of four trial days before the Honorable Warren K. Urbom.  Jury selection will be at the commencement of trial.

Dated this 1st Day of November, 2006.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge