IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiffs, | ) | 4:06CR3016 |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER ON THE |
| | ) | DEFENDANT'S OBJECTIONS TO THE |
| ARMANDO GARCIA-DELACRUZ, | ) | MAGISTRATE JUDGE'S REPORT AND |
| | ) | RECOMMENDATION |
| Defendants. | ) | |
| | ) | |

The defendant, Armando Garcia-Delacruz, has moved to suppress evidence that was obtained by law enforcement officers during a search of his residence on January 25, 2006. (See filing 39.) A hearing on the defendant's motion was held before United States Magistrate Judge David L. Piester on October 3, 2006, (see filing 54), and, pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the magistrate judge has recommended that I deny the defendant's motion to suppress, (see filing 63). Now before me are the defendant's objections to the magistrate judge's report and recommendation. (See filing 65.) In the course of my de novo review of those portions of the magistrate judge's report that the defendant challenges, see United States v. Lothridge, 324 F.3d 599, 600 (8th Cir. 2003); 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3), I have studied the magistrate judge's report and recommendation (see filing 63); the transcript of the October 3 hearing (see filing 64); the exhibits received into evidence at the hearing (see filing 55); and the briefs submitted by the defendant in support of his motion to suppress and his objection to the report and recommendation (see filings 40, 66). I have also studied the government's briefs in opposition to the defendant's motion to suppress and objections to the report and recommendation. (See filings 52, 67.) I find that the magistrate judge's recommendation should

be adopted. The defendant's objections will be overruled, and his motion to suppress will be denied.

## I.  BACKGROUND

The relevant facts are summarized in the magistrate judge's report and need not be repeated here in full. Indeed, with one exception,[1] the parties agree that the magistrate judge's factual findings should be adopted. (See Def.'s Br., filing 66, at 1; Pl.'s Br., filing 67, at 1-2.) Briefly, an investigation into methamphetamine trafficking led to the indictment of the defendant on January 20, 2006. On January 23, 2006, a warrant was issued for the defendant's arrest. Members of the Adams County Special Response Team (SRT) prepared to execute the arrest warrant at the defendant's residence on January 25, 2006; meanwhile, other officers worked to complete an application for a warrant to search the defendant's residence. Investigator Glenn Kemp testified that the officers' original plan was to delay the defendant's arrest until a search warrant could be obtained, because this would allow them to search the defendant's home immediately after they made the arrest. (See Tr., filing 64, at 15:19-16:1.) However, when the officers stationed near the defendant's residence saw several people arriving at the residence, the officers decided to arrest the defendant, who was outside his residence near the back door, without waiting for the search warrant. (See id. at 16:5-17:25.)

As the SRT officers approached the defendant's residence, the defendant and another individual entered the residence through the back door. When the officers reached the back

---

[1]The government points out, correctly, that the name "Kemp" was mistakenly substituted for the name "Consbruck" in the last paragraph of page two, the first paragraph of page three, the first paragraph of page seven, and the second paragraph of page eight of the magistrate judge's report. (See Report & Recommendation, filing 63, at 2, 3, 7, 8; see also Pl.'s Br., filing 67, at 1-2.)

door–which was open–they saw the defendant and another individual standing below them in the basement of the home. When the defendant and the other individual did not immediately respond to the officers' verbal warnings, three officers jumped down into the basement, which was accessible only through the use of a broken stepladder, and seized the two men. (See Tr., filing 64, at 45:11-22.) One of the officers, Deputy Brad Consbruck, then performed a "sweep" of the basement to check for additional persons and other dangers.[2] During this sweep, Deputy Consbruck spotted, in plain view, drug paraphernalia and three firearms. (See Tr., filing 64, at 48:15-23, 49:16-24.)

Deputy Consbruck's observations were relayed to the officers who were preparing the application for the search warrant, and the officers included those observations in the affidavit that accompanied the warrant application. (See Pl.'s Ex. 2 at 5.) Ultimately, a search warrant issued, the defendant's residence was searched, and a number of items were seized from the residence. (See generally Pl.'s Ex. 2.)

The defendant moved to suppress all evidence obtained from his residence. (See filing 39.) In support of his motion, the defendant argued that 1) the SRT officers lacked a reasonable belief that the defendant "resided or was currently present at" his home, and therefore the officers had no "authority to conduct a search for [the defendant] inside the residence without a search warrant"; and 2) the search warrant was tainted by the information provided by Deputy Consbruck because the Deputy's sweep was an illegal search. (See generally filing 40.) The magistrate judge has considered the defendant's motion and recommends that it be denied. (See generally Report, Recommendation, and Order, filing 63.) On November 10, 2006, the

---

[2]Another officer may have followed Deputy Consbruck as he performed his sweep. (See Tr., filing 64, at 50:18-22.)

defendant filed objections to the magistrate judge's report and recommendation. (See filing 65.) My analysis of these objections is set forth below.

## II. ANALYSIS

The defendant argues first that Deputy Consbruck's sweep of the basement violated the Fourth Amendment. (See Def.'s Br., filing 66, at 1-3.) I disagree.

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Maryland v. Buie, 494 U.S. 325, 327 (1990). "It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Id. Protective sweeps are permitted under the Fourth Amendment if they are supported by a sufficient justification. See id. at 327, 334. Whether a sufficient justification exists depends, in part, upon the extent of the protective sweep. For example, the Supreme Court has held that "as an incident to the arrest . . . officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Id. at 334. See also United States v. Waldner, 425 F.3d 514, 517 (8th Cir. 2005) (quoting Buie, 494 U.S. at 334). Broader protective sweeps are consistent with the Fourth Amendment only if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Buie, 494 U.S. at 334; see also Waldner, 425 F.3d at 517. Even if a protective sweep is justified by a reasonable suspicion that the area harbors an individual posing a danger, the sweep must be limited "to a cursory inspection of those spaces where a person may be found," and may last "no longer than is necessary to dispel the reasonable

suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." Buie, 494 U.S. at 335-36.

In this case, the officers' protective sweep of the defendant's basement was permissible under the Fourth Amendment. The sweep was a quick[3] and limited search of the basement incident to an arrest; it was narrowly confined to a cursory visual inspection of places where a person might be hiding; and it was conducted to protect the safety of the officers. In addition, the witnesses' testimony describes the basement as a single room of average size that was in the process of being remodeled. (See Tr., filing 64, at 37:4-14, 38:8-18 (describing the basement as an "L" shaped room with 2 x 4 stud walls without drywall); 47:17-48:9 (describing the basement as "an average size room" with an obstruction running down the middle).) Thus, I find that the protective sweep of the basement was limited to the space "immediately adjoining the place of arrest from which an attack could be immediately launched." Buie, 494 U.S. at 334. In other words, this was the sort of protective sweep that need not be justified by a reasonable suspicion that the area swept harbored a person who posed a danger to the officers.

Although the sweep need not have been based upon a reasonable suspicion, it seems to me that Deputy Consbruck had a reasonable belief based on specific and articulable facts that the basement harbored an individual who posed a danger to those on the arrest scene. Buie, 494 U.S. at 337. Specifically, Deputy Consbruck had been informed that other people could be in the house, (see Tr., filing 64, at 61:18-24), and that the defendant not only possessed weapons, but stored those weapons in the basement, (see id. at 41:5-11, 45:11-14, 60:8-10). This is enough to establish a reasonable suspicion that would justify a protective sweep of the basement. Cf.

---

[3]Deputy Consbruck testified that the sweep lasted thirty to forty-five seconds. (See Tr., filing 64, at 48:25-49:1.)

United States v. Cash, 378 F.3d 745, 749 (8th Cir. 2004) ("Since an officer approaching a suspected drug trafficker in the open is justified in conducting a Terry stop and frisk out of concern that the suspect may resort to violence to thwart the encounter, it follows that an officer arresting a suspected trafficker in one room of a multi-room residence is justified in conducting a Buie sweep out of concern that there could be individuals lurking in the other rooms who may resort to violence to thwart the arrest."); United States v. Waldner, 425 F.3d 514, 517 (8th Cir. 2005) (holding that a protective sweep exceeded its permissible scope because there was "no evidence that the officers had any articulable facts that an unknown individual might be in the office, or anywhere else in the house, ready to launch an attack"); United States v. Boyd, 180 F.3d 967, 976 (8th Cir. 1999) (holding that protective sweep was proper when the officers "had no way of knowing how many people were there," and the sweep was "quick and limited, . . . and initially confined to places large enough to conceal a person").[4]

Since the evidence was discovered in plain view during the course of a valid protective sweep of the basement, it is admissible. See United States v. Boyd, 180 F.3d 967, 976 (8th Cir. 1999) (citing, inter alia, Buie, 494 U.S. at 330). Perhaps more to the point, it was appropriate for the officers to add a description of this evidence to the search warrant affidavit. See United States v. Smith, No. 8:05CR422, 2006 WL 994636, at *13 (D. Neb. April 12, 2006) (explaining that since the officers would have been justified in seizing the evidence found in plain view

---

[4]The defendant points out, correctly, that Deputy Consbruck testified that the SRT is trained to do a protective sweep each time it does an "entry." (See Def.'s Br., filing 66, at 3 (citing Tr., filing 64, at 47).) It seems to me that this is consistent with Deputy Consbruck's and Investigator Kemp's testimony that the SRT is used for "high risk" arrests. (See Tr., filing 64, at 14:16-20, 40:2-6.) Indeed, Investigator Kemp testified that the SRT was used for the defendant's arrest because the officers had information that the defendant kept several weapons in his home. (See id. at 15:1-9.) In any case, it does not follow from the fact that it is the SRT's routine practice to perform protective sweeps when making high risk arrests that the particular protective sweep in this case offended the principles of the Fourth Amendment articulated in Buie.

during a protective sweep, it was proper to note the existence of that evidence in the search warrant affidavit).

In view of the foregoing, the defendant's remaining arguments, i.e., that the sweep cannot be justified as a search incident to a valid arrest and that the government cannot rely upon the "independent source" or "inevitable discovery" doctrines, (see Def.'s Br., filing 66, at 4-7), are moot. Nevertheless, I have reviewed de novo the magistrate judge's determination that the independent source exception to the exclusionary rule would apply in this case, and I find this determination to be correct. It is clear that the officer's decision to seek the search warrant was independent of the SRT's entry of the basement and that the search warrant affidavit would be sufficient to support the issuance of a valid warrant even if Deputy Consbruck's observations were deleted from it. See Murray v. United States, 487 U.S. 533, 542 (1988) (describing elements of the independent source doctrine); United States v. Khabeer, 410 F.3d 477, 483 (8th Cir. 2005) (same).

The defendant argues that the affidavit submitted in support of the search warrant application would be insufficient if the information obtained during the sweep were omitted. (See Def.'s Br., filing 66, at 5-7.) More specifically, he argues that the rest of the information appearing in the affidavit is stale and that the affidavit does not establish that the defendant "routinely" or "continuously" kept narcotics at his residence. (See id. at 6-7.) However, I am not persuaded that the affidavit would be insufficient without Deputy Consbruck's observations.

Turning first to the question of staleness, I note that "[t]here is no bright-line test for determining when information is stale." United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993). "Time factors must be examined in the context of a specific case and the nature of the crime under investigation." Id. "Where suspected criminal activity is continuing in nature and

the property is not likely to be destroyed or dissipated, the passage of time may be less significant.  However, information of an unknown and undetermined vintage relaying the location of mobile, easily concealed, readily consumable, and highly incriminating narcotics could quickly go stale in the absence of information indicating an ongoing and continuing narcotics operation." United States v. Kennedy, 427 F.3d 1136, 1142 (8th Cir. 2005) (citation and footnote omitted).  Here, the information included in the affidavit (setting aside the information stemming from the protective sweep) is not of an "unknown and undetermined vintage."  Instead, the affidavit describes an ongoing controlled substances operation between July 25, 2005, and December 23, 2005, and it is reasonable to infer that the operation continued thereafter.  (See Pl.'s Ex. 2 at 2-5).  Therefore, I find that the information is not stale.

Second, the affidavit is not insufficient because it fails to establish that the defendant routinely and continuously kept narcotics at his residence.  "[An] affidavit need only establish the probability of criminal activity and presence of evidence on specific premises, not proof beyond a reasonable doubt.  It is not required that the affidavit allege direct observation of criminal activity in order to justify the issuance or a warrant." United States v. Packer, 730 F.2d 1151, 1155 (8th Cir. 1984) (citations omitted).  It seems to me that the information alleged in the affidavit is sufficient to establish a reasonable probability that the items specified in the warrant application would be found in the defendant's residence, even when the SRT's observations are excluded.

In sum, I find that the evidence observed by the SRT during its protective sweep of the basement of the defendant's residence was properly included in the search warrant affidavit and is admissible.  Furthermore, even if the protective sweep exceeded the bounds of the Fourth Amendment, the independent source exception to the exclusionary rule is applicable.  The evidence obtained from the defendant's residence on January 25, 2006, will not be suppressed.

**IT IS ORDERED** that:

1. The defendant's objections to the magistrate judge's report and recommendation, filing 65, are overruled;

2. The magistrate judge's report and recommendation, filing 63, is adopted; and

3. The defendant's motion to suppress, filing 39, is denied.

Dated December 7, 2006.

                BY THE COURT

                s/   Warren K. Urbom
                United States Senior District Judge